```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/2/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN BRANCACCIO,

                      Petitioner,

            -against-

UNITED STATES OF AMERICA,

                      Respondent.
------------------------------------------------------------X

14 Civ. 1538 (RMB)

**DECISION & ORDER**

## I.   Background

On or about February 25, 2014, John Brancaccio ("Brancaccio," "Petitioner" or "Defendant"), proceeding pro se, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("Petition"). Brancaccio seeks to vacate, set aside or correct his 165-month sentence which was imposed on September 20, 2012. (Filed J. Criminal Case ("Judgment") at 2, United States v. Brancaccio, No. 11 Cr. 12 (S.D.N.Y. 2012), ECF No. 618.) **For the following reasons, Brancaccio's Petition is respectfully denied.**

On April 26, 2012, Petitioner pled guilty to one count of (substantive) racketeering in violation of 18 U.S.C. § 1962(c), pursuant to a plea agreement dated April 25, 2012 ("Plea Agreement"). (See Plea Hr'g Tr., Apr. 26, 2012.) Brancaccio's Plea Agreement stipulated, inter alia, that Petitioner's sentencing range was 210 to 240 months. (Plea Agreement at 5, Apr. 25, 2012.) It also provided that either party could seek a sentence outside the stipulated range, based upon the factors set forth in 18 U.S.C. § 3553(a). Additionally, Petitioner waived any right to file a direct appeal, or to litigate under §§ 2255 or 2241, any sentence within or below the stipulated guidelines range of 210 to 240 months. (Plea Agreement at 5-6.)

As noted, on September 20, 2012, the Court sentenced Brancaccio to 165 months incarceration, followed by three years of supervised release. Brancaccio's term of incarceration was significantly below the agreed upon 210 to 240 Guidelines range. (Judgment at 2.) On May 16, 2013, the U.S. Court of Appeals for the Second Circuit dismissed Brancaccio's direct appeal, granting the Government's motion on the grounds that the appeal was "barred by the wavier of appellate rights contained in Appellant's plea agreement[.]" United States v. Corozzo et al., No.12-3984 (2d Cir. May 16, 2013) (order granting motion to dismiss). Subsequently, Brancaccio filed a motion to recall the mandate and reinstate the appeal, which was denied by the Second Circuit on October 30, 2012. United States v. John Brancaccio, No. 12-3984 (2d Cir. Oct. 30, 2013) (order denying motion to recall).

In his Petition, Brancaccio argues principally that his counsel, Robert Ray, Esq., "was ineffective before the district court" because Mr. Ray coerced and intimidated Brancaccio to plead guilty.[1] He alleges that Mr. Ray "implant[ed] in Petitioner Brancaccio the thought that the Court had abandoned all pretenses of neutrality, 'and told [Brancaccio] he would get 37 years in prison, if he [did] not plead the case[.]'"(Pet'r's Mem. of Law ("Pet'r Mem.") at 4, Feb. 25, 2014.) Brancaccio also charges that Mr. Ray failed to "mak[e] an independent investigation …

---

[1] Mr. Ray, a member of the CJA panel, was appointed on November 17, 2011, after Brancaccio asked the Court to replace his original CJA attorney, Steven Frankel, Esq. (See Conf. Tr. 2-3, Nov. 16, 2011.)

On March 6, 2012, Brancaccio wrote to the Court, requesting that Mr. Ray also be replaced. (See Endorsed Letter, March 6, 2012, ECF No. 414.) The Court denied this request. (See Conf. Tr., Mar. 12, 2012.) Brancaccio wrote another letter to the Court, dated May 23, 2012, seeking to withdraw his plea and to replace Mr. Ray. At a conference held on June 14, 2012, after consulting with independent CJA counsel, Priya Chaudhry, Brancaccio withdrew his May 23, 2012 letter. The Court stated: "[J]ust so the record is clear, I think we already established this, but I want to hear one more time. Mr. Brancaccio, so you understand and you wish, do you, to go forward to sentencing on July 25, 2012, with Mr. Ray as your counsel?" Brancaccio responded: "Yes, I do, your Honor." (See Conf. Tr., June 14, 2012 at 15:22-25, 16:1-2.)

2

[into the] case" and failed to file "a motion to suppress, and dismiss." (Pet'r Mem. at 2.) Brancaccio also alleges that "on April 24, 2012 the Court held a conference hearing, and at length discussed plea negotiations with the prosecutor, and defense counsel, in violation of Federal Rule of Criminal Procedure 11(c)(1)." (Pet'r Mem. at 8, 9, 11.)

The Court provided Petitioner's counsel, Mr. Ray, an opportunity to respond to allegations that he had been ineffective, pursuant to Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998). (See Order, dated June 1, 2015 at 2.) On June 16, 2015, Mr. Ray filed a five page affirmation ("Affirmation") in which he states, inter alia, that:

> [Brancaccio's] claim of coercion by counsel is first that I 'implant[ed] in [Brancaccio] the thought that the Court had abandoned all pretenses of neutrality, and told him he would get 37 years in prison if he [did] not plead the case.' In response, I correctly and appropriately advised Brancaccio that if he proceeded to trial and was convicted by a jury of the charges contained in the Indictment, he would face sentencing on, among other things, the narcotics conspiracy count, with the expected filing of a prior felony information, of a mandatory minimum term of 20 years in prison and a [maximum] of life imprisonment. In addition, Brancaccio was advised, consistent with what was referenced in the plea agreement, that the career offender provision of the Guidelines also were 'potentially applicable.' ... Brancaccio was advised that he faced a minimum sentence of 37 years' imprisonment upon conviction following trial – not in order, as he incorrectly claims, to coerce a plea, but because ... it was so.

(Affirmation ¶¶ 9, 10.)

Mr. Ray also states:

> Finally, to Brancaccio's argument that he was '**intimidated**' to 'not rock the boat and accept the plea agreement by defense counsel ... [a]nd, more importantly attorney Ray **CANNOT DENY THIS FACT**' (ECF 21 at 6) (emphasis in original), I can and I do. In any event, when asked at the time of his plea whether he was 'fully satisfied' with 'Mr. Ray's legal representation of [him],' Brancaccio responded emphatically, 'Yes, sir, more than ever.'

(Affirmation ¶ 14.)

On July 6, 2014, the United States ("Government") responded to the Petition stating that "none of Brancaccio's allegations of ineffective assistance of counsel, which are entirely

3

conclusory and uncorroborated, overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990). The Government also argues that "Brancaccio's Petition is barred by the express waiver in his Plea Agreement." (Gov't's Mem. of Law in Opp'n ("Gov't Mem.") at 1, July 6, 2014.)

On January 7, 2015, Brancaccio filed a reply to the Government's Opposition (Pet'r's Traverse Br. Resp. ("Reply"), Jan. 7, 2015).[2]

## II.    Legal Standard

To establish constitutionally ineffective assistance of counsel, a petitioner must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668 (1984). See Hill v. Lockhart, 474 U.S. 52, 57 (1985). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. A petitioner must also affirmatively prove prejudice, i.e., that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 694. "Judicial scrutiny of counsel's performance must be highly deferential," as there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

A "defendant's knowing and voluntary waiver of the right to appeal a sentence is generally valid and enforceable." United States v. Morales, 407 Fed. App'x 528, 530 (2d Cir. 2011).

Courts "read the pleadings of a pro se plaintiff liberally and 'interpret them to raise the strongest arguments they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

---

[2] **Any issues raised by the Petitioner not specifically addressed herein were considered by the Court and rejected on the merits.**

4

### III. Analysis

**A Full Evidentiary Hearing is Unnecessary**

Preliminarily, the Court denies Brancaccio's request for an evidentiary hearing. Where, as here, it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal." Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000). The materials contained in the record, including Mr. Ray's Affirmation, supply the necessary basis for resolving the Petition. Rosa v. United States, 170 F. Supp. 2d 388, 399 (S.D.N.Y. 2001).

**Petitioner's Trial Counsel was Not Ineffective**

The Court concludes that Petitioner has not established ineffective assistance of counsel. First, Brancaccio alleges (implausibly) that he was coerced. In his Affirmation, Mr. Ray flatly rejects Brancaccio's claim that Ray coerced or threatened Brancaccio with a particular sentence. "Brancaccio was advised that he faced a minimum sentence of 37 years' imprisonment upon conviction following trial – not in order, as he incorrectly claims, to coerce a plea, but because ... it was so." (Affirmation ¶ 10.) Even "defense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, [does not] constitute improper behavior or coercion that would suffice to invalidate a plea." United States v. Juncal, 245 F.3d 166, 172 (2d Cir. 2001).

Court proceedings also contradict the claim that Petitioner was coerced or threatened in any way to plead guilty, or that the plea was involuntary. The Court engaged in the following colloquy on April 26, 2012 to ensure the plea was given knowingly and voluntarily:

> THE COURT: Are you fully satisfied with Mr. Ray's legal representation of you?
> THE DEFENDANT: **Yes, sir, more than ever.**

5

> THE COURT: Are you fully satisfied with the legal advice that he has given you?
> THE DEFENDANT: Yes, sir.
>
> ....
> THE COURT: [H]ave you discussed fully with your attorney those charges in the indictment to which you intend to plead guilty?
> THE DEFENDANT: Yes, sir.
>
> ....
> THE COURT: Has anybody threatened you or in any way forced you to plead guilty?
> THE DEFENDANT: No, sir.
> THE COURT: Including any attorneys?
> THE DEFENDANT: No, sir.
> THE COURT: [D]id you read that plea agreement and discuss it carefully with your attorney?
> THE DEFENDANT: Yes, sir, I did.
>
> ....
> THE COURT: Mr. Brancaccio, do you understand these several provisions that I have been describing, all of which relate to your waiving your rights to appeal?
> THE DEFENDANT: Yes, sir.

(See Plea Hr'g Tr., Apr. 26, 2012 at 10:20-25, 13:15-18, 18:25-19:4, 22:14-22 (emphasis added).)

Brancaccio asserts that his counsel told him "if he [did] plead guilty to the plea agreement, he would get [credit for 76 months previously served], because, '[he had] the judge's ear on this.'" (Pet'r Mem. at 4.) Mr. Ray states that "as for [Brancaccio's] claim that I had any comment whatsoever regarding the Court's 'neutrality,' that claim is false. (Affirmation ¶ 10.) Mr. Ray also states: "To the extent any such promises were made by counsel (and they were not), the plea colloquy disposed of any potential future claim of involuntariness." (Affirmation ¶ 12)

> THE COURT: [I]n the plea agreement dated April 25, 2012, there is a sentence which reads as follows: 'The sentence to be imposed upon the defendant ... John Brancaccio, is determined solely by the Court.' And so, first of all, [does] counsel agree with that[?]
> MR. RAY: Yes, your Honor.
> THE COURT: And do you, Mr. Brancaccio, agree with that as well?
> THE DEFENDANT: Yes, sir.
> ....

6

> THE COURT: Has anybody made any promise to you or any inducement, Mr. Brancaccio, to cause you to plead guilty today, apart from what is contained in the plea agreement dated April 25, 2012?
> THE DEFENDANT: No, sir, your Honor.
> ....
> THE COURT: So has anybody made to you, Mr. Brancaccio, any promise as to what sentence you will receive in this case?
> THE DEFENDANT: No, sir.
> THE COURT: Including any attorneys?
> THE DEFENDANT: No, sir.

(Plea Hr'g Tr., Apr. 26, 2012 at 18:10-21, 22:18-22, 24:2-7.)

Brancaccio's other "claims," i.e., failure to investigate his case and failure to file motions to suppress and dismiss, are also without merit. In fact, Mr. Ray requested that the Court provide (financial) assistance for investigative services. (See Ex Parte Application, Jan. 19, 2012.) He ultimately did not pursue this request because a plea agreement had been signed and a guilty plea was taken. (See, e.g., Ex Parte Conf. Tr., Mar. 20, 2012 at 7:1-25, 8:1-2 (Mr. Ray: "I made an application, so that it is clear for Mr. Brancaccio's benefit, to the Court for an investigator. I needed to be more specific by way of an affidavit as to the time that I was asking for and the hourly rate and so forth. Mindful of the fact that the Court doesn't make an open-ended appointment for an investigator, I wanted to be certain first either that we were either going to have a trial or not have a trial. With three months to go, that is enough time for an investigator to do work. I would expect, if we don't reach a resolution, to be back before your Honor with an affidavit in support for an application for that investigator").) Moreover, Brancaccio's allegations that "[c]ounsel failed to introduce exculpatory evidence, [presumably by Gardner Investigative Services, which] was ready to direct to material witnesses readiness [sic] to exculpate John Brancaccio," include no specifics and point to no exculpatory evidence.[3] (Pet'r

---

[3] Gardner Investigative Services appear to be a private investigation organization that Brancaccio alleges contacted his prior counsel, Mr. Frankel. Brancaccio suggests that Gardner may have

7

Mem. at 17.); see Medrano, 2015 WL 848551, at *22 (Medrano "failed to ... explain the expected nature of the witnesses' testimony as is necessary to prove prejudice"). "To successfully assert an ineffective assistance of counsel claim based on a failure to investigate, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." Medrano v. United States, No. 13-CV-1604, 2015 WL 848551, at *22 (S.D.N.Y. Feb. 27, 2015) (quoting United States v. Peterson, 896 F. Supp. 2d 305, 316 (S.D.N.Y. 2012).

And, with respect to possible defenses, Mr. Brancaccio signed an "advice of rights" form, on April 26, 2012, which advised him of his right to a trial and his rights at trial, including, among other things, that he "would be entitled to compulsory process of the Court to obtain witnesses to testify and evidence to be offered in [his] defense." The advice of rights form also stated: "My decision to plead guilty is freely and voluntarily made. I have not been induced to plead guilty to any count by any promises other than those contained in any written plea agreement that I have signed ... or by any statement that I would receive leniency, a lesser sentence, or any other consideration if I pleaded guilty instead of going to trial. I have not been induced to plead guilty by any force, coercion, pressure or fear. I am pleading guilty because after discussing the case with my attorney I believe that I am guilty. I am satisfied with how my attorney has represented me." (Advice of Rights Form, Apr. 26, 2012, ECF No. 457.) And, when asked by the Court at his plea conference on April 26, 2012, if he "had a full opportunity to discuss all aspects of this case with [his] attorney ... including any possible defenses that [he] might have to the charges in the indictment," Brancaccio responded "Yes, sir, your Honor."

---

had information "regarding action by law enforcement that was the product of informants that were used in three other prosecutions. This information was passed along to defense counsel, which by the way has been viewed upon as exculpatory[.]" (Reply at 11.)

(Plea Hr'g, Apr. 26, 2012 at 10:13-19); (see also Advice of Rights Form, Apr. 26, 2012, ECF No. 457.)

Brancaccio's allegations that his counsel failed to file motions to suppress evidence and dismiss the case are, similarly, without merit. Several motions were filed on Mr. Brancaccio's behalf by Mr. Ray and predecessor counsel, Mr. Frankel. These motions included a joint motion asserting more than twelve bases for relief (See Mot., Nov. 2, 2011, ECF No. 292.); and motions seeking severance (See Resp. to Gov't Severance, Dec. 16, 2011, ECF No. 329); (see also Renewed Mot. for Severance, Mar. 30, 2012, ECF No. 434.) Additionally, during a conference held on April 25, 2012, at which Mr. Brancaccio was arraigned on a Superseding Indictment, Mr. Ray requested the opportunity to brief issues related to the new count in the Superseding Indictment, i.e. "multiplicity and whether or not [the count is] duplicitous." (See Conf. Tr., Apr. 19, 2012 at 14:14-15.) Mr. Ray also stated at this conference that he had "a fully submitted ex parte application" pending before the Court. (See Conf. Tr., Apr. 19, 2012 at 18:24-25.)

"[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. There is no such showing here. Brancaccio does not identify any evidence that should or would have been suppressed, nor does he demonstrate that any motion to dismiss had even a remote chance of succeeding. Indeed, strong evidence proffered by the Government included "testimony from multiple cooperating witnesses ... consensually recorded tapes ... [and] surveillance related evidence[.]" (Plea Hr'g at 25:4-7); see also Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997); Strickland, 466 U.S. at 687.

9

**There Was a Clear Factual Basis for Petitioner's Guilty Plea**

Petitioner contends that the Court abused its discretion by failing to ensure a factual basis for his guilty plea. The Government responds that "before accepting Brancaccio's plea, [the Court] ensured that there was a factual basis for the plea through a thorough colloquy." (Gov't Mem. at 9.)

A district court, "in determining whether there was a factual basis for the plea ... should satisfy itself, by inquiry of the defendant or the attorney for the government ... that the conduct which the defendant admits constitutes the offense charged." Irizarry v. United States, 508 F.2d 960, 967 (2d Cir. 1974). In the Plea Agreement, Brancaccio admitted to "cocaine trafficking ... marijuana trafficking ... extortion conspiracy ... and operating an illegal gambling business." (Plea Agreement at 1.)

The statements made by Brancaccio during his plea allocution demonstrate overwhelmingly that a factual basis existed for the plea:

> THE COURT: [T]ell me again in your own words ... what it is that you did that makes you believe that you are in fact guilty of the charges set forth in Count 2 of the indictment which is referred to as S3, and these are the racketeering charges, substantive count of racketeering.
> THE DEFENDANT: I understand that any part that I had in narcotics trafficking or sports betting, no matter how small or large it may be, it is relevant to this indictment and I understand that I am guilty of that, your Honor.
> THE COURT: So did you engage in cocaine trafficking?
> THE DEFENDANT: Yes, sir.
> THE COURT: Did you engage in marijuana trafficking?
> THE DEFENDANT: Yes, sir.
> THE COURT: And did you engage in extortion conspiracy?
> THE DEFENDANT: Yes, sir.
> THE COURT: Did you engage in operating an illegal gambling business, sports betting?
> THE DEFENDANT: Yes, sir ... And I understand that those activities in some way furthered the [Gambino] enterprise.
> THE COURT: Did you engage in these activities during the period of the late 1980s to in or about 2011?

10

> THE DEFENDANT: Yes, your Honor. From the late 1980s up to the present time, other than the time I spent in prison[.]
> THE COURT: Did you engage in these racketeering activities with other persons described in the indictment as members of the Gambino family?
> THE DEFENDANT: Yes, sir.
> THE COURT: You knew these activities were illegal, right?
> THE DEFENDANT: Yes, sir, I did.
> THE COURT: Are you pleading guilty to Count 2 of the indictment because you are in fact guilty of these criminal acts?
> THE DEFENDANT: Yes, sir.
>
> ....
>
> THE COURT: [Do] you understand that by extortion conspiracy is meant the receipt of money from an individual by threat or actual force?
> THE DEFENDANT: Yes, sir.
>
> ....
>
> THE COURT: .... It is the finding of the Court ... that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact supporting each of the essential elements of the crimes charged in Count 2 of the indictment.

(Plea Hr'g Tr., Apr. 26, 2012 at 27:16-28:6, 28:15-23, 29:3-30:2, 30:11-15, 31:2-13.)

As the court in Juncal observed: "This testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony[.]" Juncal, 245 F.3d at 171 (2d Cir. 2001); See also United States v. Torres, 129 F.3d 710 (2d Cir. 1997).

A factual basis for Brancaccio's plea was also supported by the Government's proffer at the plea hearing on April 26, 2012:

> The government would be able to prove beyond a reasonable doubt the guilt of the defendant, John Brancaccio, on Count 2 of the S3 indictment, specifically, the substantive RICO count .... The government would present, among other things, the testimony from multiple cooperating witnesses, lay witnesses, and law enforcement witnesses; consensually recorded tapes involving the defendant and co-conspirators; as well as surveillance related evidence of the defendant and his co-conspirators. The evidence would prove that the defendant was an associate of the Gambino organized crime family .... As a Gambino family associate, the government would prove that the defendant took part in and committed multiple crimes, including the defendant's participation in the trafficking of multi-kilo quantities of cocaine and marijuana. In 2009, the defendant's participation in the conspiracy to extort approximately $75,000 from an individual through the threat of force and the use of a firearm, and the defendant's participation in the

11

>> operation of a Gambino family's gambling business, specifically, a sports betting or bookmaking business.

(Plea Hr'g Tr., Apr. 26, 2012 at 24:20-23, 25:3-23.)

### Petitioner Waived the Right to Collaterally Attack his Sentence

The waivers contained in Brancaccio's Plea Agreement, barring, among other things, a direct appeal or collateral challenge, were knowing and voluntary. "The Second Circuit has repeatedly upheld the validity of appeal waivers that are 'knowingly, voluntarily, and competently provided by the defendant.'" Peterson, 896 F. Supp. at 311 (citing United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011)). And, as previously noted, the U.S. Court of Appeals for the Second Circuit dismissed Brancaccio's direct appeal because it was barred by a valid waiver contained in his Plea Agreement. (See supra at 2.)

There can be no question that Petitioner's appeal(s) waiver was made knowingly and voluntarily. At the Plea Hearing, on April 26, 2012, Brancaccio confirmed that he fully understood the waiver:

> THE COURT: In particular, there is a provision that Mr. Brancaccio agrees not the file what is called a direct appeal and he also agrees not to bring ... a collateral challenge ... under what is referred to as 28 U.S.C. §§ 2255 and/or 2241 .... In other words, Mr. Brancaccio waives his right to appeal in those circumstances where, if I enter a sentence that is either within or below 210 to 240 months of incarceration.
> ....
> THE COURT: Mr. Brancaccio, do you understand these several provisions that I have been describing, all of which relate to your waiving your rights to appeal?
> THE DEFENDANT: Yes, sir.

(Plea Hr'g Tr., Apr. 26, 2012 at 21:1-13, 22:14-17); see also Tonks v. United States, No. 11 Civ. 2687, 2012 WL 4928896, at *4 (S.D.N.Y. Oct. 17, 2012).

### There Was No Violation of Rule 11

Brancaccio asserts that the Court violated Fed. R. Crim. P. 11(c)(1) during the April 24, 2012 conference. He stated that "[he] felt trapped...[and] should invalidate Petitioner's guilty

12

plea." (Pet'r Mem. at 9.) Brancaccio states: "[a]ttorney(s) and Court persisted, because [Brancaccio] stood in the way of a resolution of a 'global plea' and 'four other people' of a multi-defendant case, and prevail[ed] upon the effort of defense counsel, 'to talk more to [Brancaccio].'" (Pet'r Mem. at 4.)

Brancaccio is unable to establish that any error occurred during the April 24, 2012 plea conference. See United States v. Paul, 634 F.3d 668, 672-73 (2d Cir. 2011) ("Issues arising under Rule 11(c)(1) are highly fact-specific and, as a result, such situations must be analyzed in terms of the purposes of the rule, and not with illogical rigidity"). The relevant April 24, 2012 colloquy was as follows:

> MR. RAY: All my client is asking for at this point, at the very late stage that we're at, is some basic fairness. We're not asking anybody to commit to anything. He can't get that. He knows that. He's simply asking your Honor for the opportunity for the Court to keep an open mind ....
> ....
> AUSA HONIG: So, your Honor, I agree that the Court does not need to and really cannot and should not get deeply involved or involved at all in plea negotiations.
> THE COURT: I agree. Under Rule 11.
> ....
> THE COURT: I get it. OK. So I think, really, it is kind of your call and Mr. Brancaccio, of course, as to where you want—you [Mr. Ray] are not asking me to do anything, I take it, right now?
> MR. RAY: No. I don't think I can, consistent with ... Rule 11. I guess in some sense I am playing this out before the Court—before your Honor and the Government ....
> ....
> THE COURT: OK. So where does that leave you vis-à-vis today's proceeding? Or do you need to talk more to Mr. Brancaccio?
> ....
> MR. RAY: Your Honor, I have discussed the issue with the government, as I indicated I would, and with my client. The offer on the table is this agreement, which remains. I have reviewed it in depth with my client. And he has informed me that he declines the agreement and is going to trial.
> THE COURT: Okay. Nice to see you.

(Plea Conf. Tr., Apr. 24, 2012 at 7:7-11, 13:20-23, 16:25-17:7, 17:18-20, 18:10-16.)

13

Following the April 24, 2012 conference, Mr. Ray and the Government renegotiated the Plea Agreement to include a higher agreed upon guidelines range (210 to 240 months), but also to permit Brancaccio to argue for a sentence below that range pursuant to 18 U.S.C. § 3553(a). The following colloquy occurred on April 26, 2012:

> THE COURT: [We] have a plea agreement which in fact for the record is somewhat different from that we were considering [on April 24, 2012].
> ....
> MR. RAY: You may recall from two days ago that we appeared. Mr. Brancaccio declined at that time the government's offer which at that time was a stipulated guidelines range of 188 to 235 months – I'm talking about the bottom line .... And what has changed significantly is that, in some sense, we have agreed to make [the guidelines] higher, to make it worse in the hope ... that things might get better[.]
> ....
> THE COURT: [T]hat new range as opposed to the range in the plea agreement that we discussed two days ago which was lower, that was one principal change. And then you were about to discuss another principal change which is the addition of the third paragraph which allows both sides to present 18 United States Code Section 3553(a) factors to the Court and –
> MR. RAY: One of those principal factors which I mentioned on the record from Tuesday's proceeding is that Mr. Brancaccio insisted on the ability through counsel to make a variance argument pursuant to 3553(a). We are now permitted to do so under the terms of the now revised plea agreement which is the one now that my client has signed.

(Plea Hr'g Tr., Apr. 26, 2012 at 2:16-25, 4:8-20); (see also Plea Hr'g Tr., Apr. 26, 2012 at 18:25-19:2.)

**Discovery**

In what purported to be a separate motion, dated April 21, 2014, Brancaccio requested that the Court order discovery to assist him in addressing the issues contained in his § 2255 Petition (Mot. for Disc., Apr. 21, 2014), including "the prosecution's and defense counsel's proven failure(s) to disclose evidence, and conduct investigations, along with the many 'irregularities' that remain unexplained, presents for a more than a mere [sic] 'sound-basis' for the requested discovery." (Mot. for Disc. at 5.) The Government argues convincingly that

14

"Brancaccio provides no 'reasons' for his discovery, other than to cross-reference his Section 2255 Petition. As noted ... Brancaccio's Section 2255 claims fail as a matter of law. Accordingly, he is not entitled to any discovery on that basis. Nor does Brancaccio identify any specific items he is requesting in his Discovery Motion as required by Rule [16]." (Gov't Mem. at 25.)

"A petitioner in a habeas corpus proceeding generally does not have a right to discovery unless the petitioner can show good cause." Garafola v. United States, 90 F. Supp. 2d 313, 336 (S.D.N.Y. 2012). No good cause exists where, as here, the petitioner "failed to make specific allegations to show that he might be entitled to relief if the facts are developed more fully through discovery." Hirschfeld v. Comm'r of Div. of Parole, 215 F.R.D. 464, 465 (S.D.N.Y. 2003); see also Fed. R. Crim. P. 16; United States v. Dioguardi, 332 F. Supp. 7, 17 (S.D.N.Y. 1971).

IV. **Conclusion & Order**

**For the foregoing reasons, Petitioner's motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 [#1], as well as his motion for discovery [#7], are denied. The Clerk is respectfully requested to close the case.**

Dated: New York, New York
July 2, 2015

*/s/ RMB*

RICHARD M. BERMAN, U.S.D.J.

15